IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MAURA C. MEALY<br>3716 Haverford Avenue<br>Apt. 2R<br>Philadelphia, PA 19104<br>                Plaintiff<br>v.<br><br>CASABLANCA INVESTORS LLC<br>3615 Brandywine Street<br>Philadelphia, PA 19104<br>                Defendant | JURY TRIAL DEMANDED |

## CIVIL ACTION COMPLAINT

**I.**    **VENUE AND JURISDICTION**

1. Jurisdiction of this action is founded upon a question of federal law pursuant to pursuant to 28 U.S.C. §1331. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

**II.**    **PARTIES**

2. Plaintiff, Maura Mealy is an adult individual residing at 3716 Haverford Avenue, Apt. 2R, Philadelphia, PA 19104.

3. Defendant, Casablanca Investors, LLC (hereinafter "Casabalanca") is a corporation with a business address at 3615 Brandywine Street, Philadelphia, PA 19104.

**III.**    **FACTS**

4. At all relevant times, Defendant, Casablanca was the owner of, and in the business of renting-out, various units in the property located 3716 Haverford Avenue, Philadelphia, PA 19104, as well as other properties.

5. At all relevant times, Plaintiff, was and is a 21-year-old Drexel University student, seeking out a tenancy

6. On February 28, 2022, Casbalanca and Plaintiff entered into a lease agreement for Apt. 2R in the property located at 3716 Haverford Avenue, Philadelphia, PA 19104, with a lease term of August 1, 2022 until August 28, 2023. A true and correct copy of the lease agreement is attached hereto as Exhibit "A."

7. Apparently due to an issue during a previous tenancy unrelated to Plaintiff, on or around August 15, 2022, Defendant sent Plaintiff a sexist and discriminatory "Lease Addendum" along with a message directing her to sign the addendum.

8. The Addendum states:

   1. This is a guest policy addendum between the tenant, Maura C. Mealy, and the Landlord, Casablanca Investors LLC, for the property address at 3716 Haverford Ave, Apt. 2R, Philadelphia, PA 19104.

   2. The apartment is a 3-bedroom apartment with each room rented to single, female students. The tenant may receive guests, **but as a courtesy to, comfort of, and safety of the other tenants, the tenant agrees to the following conditions regarding a male guest:**

      a. **The male guest must not visit without the tenant's presence.**

      b. **The male guest must not have an overnight visit.**

      c. **If visiting at night, the male guest must not stay past 12:00 midnight.**

   3. The tenant will make sure that her guests behave in a courteous and proper behavior at all times. Any and all complaints regarding the tenant's guests will be investigated and recorded in the tenant's record. If the tenant fails to address recurring complaints, the landlord can end the tenant's lease with a 30-day's notice.

> 4. The tenant must not share the apartment door code to (sic) her guests.

If this is violated, the landlord can end the tenant's lease with a 30-day's notice.

<u>See</u> lease addendum attached hereto as <u>Exhibit "B."</u> (emphasis added).

9. Upon receipt of the Addendum, the same day, Plaintiff sent an email to Defendant as follows:

> I just received the new addendum, and I have some questions surrounding the policy. I absolutely care about the safety of myself and other tenants; not giving out the code to guests is a good rule, but I have an issue regarding overnight guests. I will always be courteous to my roommates and fellow tenants, but I am an adult with a long-term masculine partner, and it feels unrealistic to have a curfew on a personal relationship. I understand there have been issues with a previous tenant, but I would have liked to know about this policy prior to signing my lease and moving in. I promise that my partner will only be on the premises with me, let in by me, and will not affect other tenants' routines. Is there any way the addendum could be revised to not totally restrict male guests? I hope you are doing well and hope we can reach a compromise soon!

10. On August 17, 2022, Defendant sent Plaintiff an email double-downing on its addendum as follows:

> There are multiple factors that were considered in the making of the guest policy addendum.
>
> 1. As mentioned in the email addressed to both you and Janelle, the guest policy addendum was created to protect our tenants in single-gender units and to make sure that they are safe and comfortable in their living space.
>
> 2. Many of our tenants in shared apartments are international students with varying backgrounds, beliefs, and practices. Some of them come from very conservative families who get very uncomfortable around the opposite sex. We want to make sure that all tenants in shared apartments are comfortable in their living spaces. Our company prioritizes paying tenants over someone related to

a tenant who neither pays nor has any leasing rights.

3. From a liability standpoint, it is against our insurance policy to have an unauthorized tenant on the premises. Each tenant's lease in your apartment allows for 1 tenant only. Should a problematic situation arise involving an unauthorized tenant, our company's liability insurance might not cover the incident and we could lose our insurance coverage.

4. From a business standpoint, it is not in our best interest to leave the vacant room unoccupied. We make sure that the tenants in shared apartments are all suitable tenants. We selected you based on your student status and the information provided in your rental application. The same was done in selecting your future roommate who will be attending Drexel in the fall. She is from Algeria. Given her background, she will most likely be uncomfortable if a male guest spends the night in her apartment. It's nothing personal against the male guest. It's just that she was raised a certain way and was taught certain values based on their culture and beliefs. In addition, some tenants allow their guests to use the shower, laundry, and toilets—increasing the utility costs for water and electricity, which is not ideal for us.

5. We think that the guest policy is quite reasonable. It allows you to have a male guest, up until 12:00 midnight. We cannot allow overnight stays for male guests in fairness to the other tenants who may be uncomfortable with the situation.

6. Both Janelle and Amira (future tenant) have signed the guest policy addendum. It will not be fair to either of them if we give you a modified version.

7. Lastly, our camera footage shows your male guest going inside me out of the building. We would appreciate your signing on the addendum. When Janelle returns and Amira moves in, all three of you can hold a meeting and come to an agreement where everyone will be happy. You don't have to tell us what compromise you've come up with as long as everyone is comfortable with it and don't have any regrets about the compromise.

11.     Later that night, Defendant sent Plaintiff another email requesting that she

sign the addendum.

12.     Subsequently, Plaintiff spoke with several male tenants in the building, and learned that the lease addendum was **only** sent to female residents; and that Defendant did not have any objection to male tenants having their partners stay in their units overnight.

13.     Upon discovering that Defendant's new guest policy was only applicable to women tenants, Plaintiff was caused to feel sadness, outrage, emotional distress, embarrassment, and hurt.

14.     On August 18, 2022, Plaintiff sent another email to Defendant objecting to the policy, as follows:

> As you know, I signed my lease in February and only recently was asked by Casablanca Investors LLC to sign an addendum indicating that I would agree to not have a male guest in my room past midnight. I subsequently spoke with my male neighbors in the buildings regarding the addendum. Interestingly, none of them were asked to sign such an addendum and, presumably, are permitted to have male and female guests stay in their apartment. As a tenant, this feels as if my unit is being targeted, as women, with a perception that we are weak and unable to communicate our comfortability/cultural differences, unlike our male tenant counterparts. They are respected and allowed to settle these matters within their apartment without management interference. Please advise whether Casablanca Investors intends to attempt to compel me to sign this insulting, offensive, sexist, misogynistic, and discriminatory addendum or if my roommates and I can decide what we are comfortable with together, like fellow tenants are granted to do, without affecting our existing agreement. I look forward to your prompt response.

15.     To date, however, Defendant has refused to back off on its request that Plaintiff sign the lease addendum.

## COUNT I: VIOLATION OF THE FAIR HOUSING ACT, 42 U.S.C. §3604

16. Plaintiff incorporates by reference the preceding and succeeding paragraphs of the Complaint as though fully set forth herein at length.

17. 42 U.S.C. §3604(b) makes it an unlawful housing practice to "discriminate against any person in the terms, conditions or privileges....of rental of a dwelling, or in the provision of services or facilities therewith, because of race, color, religion, sex, familial status, or national original."

18. Defendant has willfully, wantonly, and outrageously discriminated against Plaintiff, in violation of the Fair Housing Act as follows:

   a) insisting that she sign an addendum to her lease which would prohibit her from having her male-partner stay in her leased apartment past midnight, yet not requesting that any male tenants in the building sign a similar lease addendum;

   b) threatening to evict Plaintiff in the event she has her male partner stay in her apartment past midnight, with no similar threats to the male tenants in her building;

   c) threatening to evict Plaintiff in the event she allowed her male partner to enter her apartment outside of her presence, with no similar threats to the male tenants in the building;

   d) making insulting assumptions (and possessing draconian beliefs) that Plaintiff is weak and unable to communicate her comfort/cultural differences, unlike her male tenant counterparts;

   e) permitting male tenants to have guests (including other males) to have guests in the apartments past midnight, but prohibiting Plaintiff the same right simply because she is a woman;

   f) unequal application of its "unauthorized guest" policy to Plaintiff because she is a woman, as opposed to her male counterparts; and;

   g) declaring that women from different cultural backgrounds are unable to live harmoniously to the same extent as men.

19. At all relevant times, Defendant has willfully, wantonly, and outrageously discriminated against Plaintiff to promote its own business and financial interests.

20. As a result of Defendant's discriminatory conduct, Plaintiff has been caused to suffer severe emotional upset and distress, hurt, sadness, anger, frustration, outrage, and a feeling of inferiority compared to her male counterparts.

WHEREFORE, Plaintiff, Maura Mealy, demands judgment in her favor against Defendant, Casablanca Investors, LLC, for compensatory, punitive damages, and attorney's fees, in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, together with interest and costs.

## COUNT II: VIOLATION OF PENNSYLVANIA HUMAN RELATIONS ACT, 43 P.S. § 951

21. Plaintiff incorporates by reference the preceding and succeeding paragraphs of the Complaint as though fully set forth herein at length.

22. 43 P.S. § 955(h)(3) makes it unlawful to "discriminate against any person in the terms or conditions....leasing any housing accommodation.... or in furnishing facilities, services or privileges in connection with the ownership, occupancy or use of any housing accommodation or commercial property because of the race, color, familial status, age, religious creed, ancestry, sex, national origin ..."

23. Defendant has willfully, wantonly, and outrageously discriminated against Plaintiff, in violation of the Pennsylvania Human Relations Act as follows:

   a) insisting that she sign an addendum to her lease which would prohibit her from having her male-partner stay in her leased apartment past midnight, yet not requesting that any male tenants in the building sign a similar lease addendum;

   b) threatening to evict Plaintiff in the event she has her

        male partner stay in her apartment past midnight, with no similar threats to the male tenants in her building;

   c)   threatening to evict Plaintiff in the event she allowed her male partner to enter her apartment outside of her presence, with no similar threats to the male tenants in the building;

   d)   making insulting assumptions (and possessing draconian beliefs) that Plaintiff is weak and unable to communicate her comfort/cultural differences, unlike her male tenant counterparts;

   e)   permitting male tenants to have guests (including other males) to have guests in the apartments past midnight, but prohibiting Plaintiff the same right simply because she is a woman;

   f)   unequal application of its "unauthorized guest" policy to Plaintiff because she is a woman, as opposed to her male counterparts; and;

   g)   declaring that women from different cultural backgrounds are unable to live harmoniously to the same extent as men.

24.   At all relevant times, Defendant has willfully, wantonly, and outrageously discriminated against Plaintiff to promote its own business and financial interests.

25.   As a result of Defendant's discriminatory conduct, Plaintiff has been caused to suffer severe emotional upset and distress, hurt, sadness, anger, frustration, outrage, and a feeling of inferiority compared to her male counterparts.

WHEREFORE, Plaintiff, Maura Mealy, demands judgment in her favor against Defendant, Casablanca Investors, LLC, for compensatory damages and attorney's fees, in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, together with interest and costs.

                                 **KORNBLAU & KORNBLAU, LLC**

                                BY:   /s/ Adam Kornblau
                                          ADAM G. KORNBLAU, ESQUIRE
                                          Attorney for Plaintiffs

Dated: August 23, 2022