**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MAURA MEALY,** *Plaintiff,*  v.  **CASABLANCA INVESTORS, LLC,** *Defendant*. | **CIVIL ACTION NO. 2:22-CV-3370-MMB** |

**MEMORANDUM OF DECISION**

**BAYLSON, J.**                                                                                                          **March 6, 2022**

## I.   INTRODUCTION

This is a sexual discrimination case brought by a 21-year-old female student against her landlord, Casablanca Investors, LLC, initiated under The Fair Housing Act, 42 U.S.C.A. §3604 (FHA).  Plaintiff alleges that she was discriminated against on account of her sex because Defendant "directing" her to sign an addendum to her lease agreement prohibiting male visitors from staying in her apartment overnight.  Plaintiff alleges that:

(1) Defendant has created a policy prohibiting Plaintiff from having her male-partner stay in her leased apartment past midnight, while male tenants are not similarly restricted,

(2) Defendant threatened to evict Plaintiff in the event she has her male partner stay in her apartment past midnight,

(3) Defendant threatened to evict Plaintiff in the event that she allows her male partner to enter her apartment outside of her presence, with no similar threats to the male tenants,

(4) Defendant has not placed any guest restrictions on male tenants,

(5) Defendant has expressed insulting assumptions and beliefs that Plaintiff is weak and unable to communicate her comfort/ cultural differences in the same capacity as her male counterparts,

(6) The application of the guest policy is applied unequally to Plaintiff because she is a woman,

(7) Defendant has willfully discriminated against plaintiff to promote its own business and financial interests.

Plaintiff brings a sex discrimination claim under the Fair Housing Act stemming from these allegations. The Defendant has filed a Motion to Dismiss on this claim.[1] Defendant argues that Plaintiff has failed to plead facts sufficient to allege a claim of sex-based discrimination under the FHA because the addendum was merely a policy proposal, as opposed to a rule that may be actively enforced against Plaintiff. Plaintiff argues that she has been discriminated against because Defendant's addendum is a discriminatory policy that she was asked to comply with or else risk eviction.

Reviewing the record in the light most favorable to the plaintiff, the Court will deny the Motion to Dismiss because Plaintiff has pled sufficient facts to allege a plausible claim for sex-based discrimination under the FHA.

II. **JURISDICTION**

This Court has jurisdiction to hear this case under 28 U.S.C. §1331 federal question jurisdiction because the civil action arises under federal law 42 U.S.C.A. §3604.

---

[1] Two documents have been submitted as exhibits attached to the Plaintiff's Amended Complaint. Exhibit A is the lease agreement between the parties and exhibit B is a copy of the addendum sent to Plaintiff.

### III.     FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

The following are the facts as alleged by the Plaintiff, Ms. Mealy, in her Amended Complaint ("Complaint" or "Compl.") (ECF 8). Ms. Mealy is a 21-year-old female student studying at Drexel University. Compl. (ECF 8) ¶ 2. On February 28, 2022, Ms. Mealy entered into a lease agreement for Apt. 2R in the property located at 2716 Haverford Avenue, Philadelphia, Pennsylvania. Id. ¶ 6. The property is owned by Defendant, Casablanca, and is rented-out by Casablanca. Id. ¶ 4. On or before August 15, 2022, Casablanca drafted a document titled "Lease Addendum," which was addressed to Ms. Mealy. Id. ¶ 7-10. The addendum included an update to the guest policy and a signature line for both Ms. Mealy and Casablanca to sign. Id. The addendum provided a series of new rule changes regarding the guest policy for male guests for Ms. Mealy's unit. The new rules prohibited male guests from visiting without the tenant's presence, prohibited male guests from staying overnight, and prohibited the guests from staying past 12:00 midnight. Id. ¶ 10. The addendum also included a provision asking the tenant to ensure that her guests will behave at all times, and any and all complaints regarding guests will be investigated. If the tenant fails to address recurring complaints, the landlord can end the lease with a 30-day's notice. Id.

After Ms. Mealy received the addendum, she emailed Casablanca to question the policy and asked if the addendum could be amended to not completely restrict male guests. Compl. at ¶ 12. In reply, Casablanca sent an email on August 17 explaining the reasoning for the new policy. Id. ¶ 13-14. That email stated that the new policy was made to address the safety and comfort of tenants in single-gender units, to accommodate the conservative social beliefs that some tenants might have regarding relationships, and because Ms. Mealy's new roommate is a woman from Algeria who, Casablanca assumes, would be uncomfortable with male guests spending the night.

Id. Later that evening, Casablanca sent another email to Ms. Mealy asking her to sign the addendum. Id. ¶ 15. Ms. Mealy's two female roommates signed the addendum and agreed to its terms. Id. ¶ 14.

Afterwards, Ms. Mealy spoke with several male tenants in the building and learned that the addendum was allegedly only sent to female tenants, which indicated to Ms. Mealy that there was no such restriction on guests for male tenants. Compl. at ¶ 16. After learning that the new policy only applied to women, Ms. Mealy reported feeling sadness, outrage, emotional distress, and embarrassment. Id. ¶ 17. On August 18, Ms. Mealy sent another email objecting to the new guest policy. Id. ¶ 18. She never received any indication afterward that Casablanca would change the policy from the addendum or allow her an accommodation. Id. ¶ 19.

Ms. Mealy filed her original Complaint against Casablanca on August 23, 2022. ECF 1. On November 25, 2022, Casablanca filed a Motion to Dismiss, after which on December 2, 2022 Ms. Mealy filed her Amended Complaint, mooting Casablanca's motion. ECF 8. Casablanca subsequently filed this Motion to Dismiss on December 23, 2022, arguing that Plaintiff has still failed to plead facts sufficient to allege that Casablanca had a discriminatory policy in place or that the Plaintiff was harmed by that policy. ECF 10. Ms. Mealy filed a Response to the Motion to Dismiss on January 1, 2023. ECF 11. Casablanca then filed a Reply in Further Support of Motion to Dismiss on January 17, 2023. ECF 12.

## IV. DISCUSSION

In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court "accept[s] all factual allegations as true [and] construe[s] the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotations and citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although a court must accept as true all factual allegations contained in a complaint, this requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555); see also Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (citing Twombly, 550 U.S. at 556 n.3) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests.")). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

### A. Fair Housing Act Discrimination Claim

To establish a claim for gender-based discrimination under the Fair Housing Act, the plaintiff must plead sufficient facts to plausibly allege that she was discriminated against "in the terms, conditions, or privileges of sale or rental of a dwelling because of race, color, religion, sex, family status, or national origin." 42 U.S.C. §3604(b). Under regulation 24 C.F.R. §100.65(b)(4), discrimination under the FHA includes "limiting the use of privileges, services or facilities associated with a dwelling" because of the protected category of the occupant. The same regulation at §100.65(b)(1) prohibits "using different provisions in leases or contracts of

sale… because of race, color, religion, sex, family status, or national origin." 24 C.F.R. §100.65(b)(1).

Typically, proving housing discrimination requires a showing of discriminatory intent by the defendant. See Cmty. Servs., Inc. v. Wind Gap Mun. Auth., 421 F.3d 170, 177 (3d Cir. 2005) ("[P]laintiff must demonstrate that some discriminatory purpose was a motivating factor behind the challenged action.") (internal quotations omitted). However, the Third Circuit recognizes that "[w]here a regulation or policy facially discriminates on the basis of the protected trait, in certain circumstances it may constitute per se or explicit discrimination because the protected trait by definition plays a role in the decision-making process." Id. (internal quotations omitted) Proving intent is unnecessary when a plaintiff can demonstrate the challenged action involves disparate treatment through explicit discrimination. Id. Ms. Mealy makes a claim of per se discrimination in the present case because she alleges Casablanca communicated to her that her sex, and the sex of her roommates, was a primary reason for the unequal application of the guest policy.

The Defendant raises three issues to consider with a Motion to Dismiss. First, has Ms. Mealy pled sufficient facts to allege discrimination under the Fair Housing Act? Second, has Ms. Mealy pled sufficient facts to allege that the lease addendum was in force as part of her lease? Third, has Ms. Mealy pled sufficient facts to establish that her housing rights were harmed by this policy? Taking the facts in the light most favorable to the Plaintiff, Ms. Mealy has pled sufficient facts to allege that the guest policy was discriminatory, was in effect, and her housing rights were harmed because of the policy.

### B. Discriminatory Effect

Taking the facts in the light most favorable to the Plaintiff, Ms. Mealy has pled sufficient facts to allege that the addendum is discriminatory under federal law and Third Circuit precedent. The addendum targeted only Ms. Mealy and her female roommates. The addendum was not sent to any of the male residents, and the terms of the guest policy create restrictions only applicable to female residents. It imposes upon Ms. Mealy and other women extra terms, duties, and repercussions that are not applicable to any of the males living in similarly situated units in the apartment complex. This facially satisfies 24 C.F.R. §100.65(b)(1)'s prohibition against requiring different contract terms based on gender, and §100.65(b)(4)'s prohibition on limiting the use of privileges or facilities associated with the dwelling because of the occupant's gender. 24 C.F.R. §§100.65(b)(1), (4). Ms. Mealy has pled sufficient facts to allege that the guest policy was designed to give different guest rights to male tenants. Thus, sufficient facts have been pled to allege that the policy is discriminatory under the FHA.

Additionally, the reasoning cited by Casablanca in its response email to Ms. Mealy points to per se gender discrimination. Casablanca argues that restrictions against male overnight guests is specific to Ms. Mealy's unit, which contains all women, because the owners assume that this will make other female tenants more comfortable. Compl. at ¶ 14. The email from Casablanca establishes that it believed these rule changes were necessary because women will be made to feel uncomfortable or unsafe if male overnight guests were allowed in the unit. Casablanca justifies this rational by arguing that the diverse cultures and conservative beliefs of some tenants warrants extra protection imposed by management. No similar argument is made either for women hosting female guests or for male tenants who would like to host overnight guests of either gender.

7

The Third Circuit has held that a policy of sexual discrimination can be established when a rule appears to reflect broad assumptions about gender roles or the capabilities of either gender. See Curto v. A Country Place Condo. Ass'n., 921 F.3d 405, 410-11. In Curto, the Third Circuit held that a gender segregated pool schedule was discriminatory in part because the times allotted to women reflected parochial assumptions about how women ought to spend their time throughout the week, even though the total time allotted to each gender was roughly the same. Id. That holding is relevant to the present case because Ms. Mealy has alleged that the unequal guest policy is based on Casablanca's internal notions of what women are comfortable with based on their gender and culture. Therefore, the plaintiff has pleaded sufficient facts that the addendum was facially discriminatory based on Ms. Mealy's gender.

Furthermore, Casablanca states in footnote 2 of its Reply that Casablanca has declined to argue the policy is non-discriminatory, because it is Casablanca's position that the policy was not in effect in the first place. Reply at 2 n.2. However, Plaintiff has pled enough facts that the policy was in effect.

**C. Enforcement and Effect of the Guest Policy**

Casablanca argues in its Motion to Dismiss that that no harm was caused to Ms. Mealy because the addendum sent to her and her roommates was never in force as a guest policy. Thus, the lease terms did not change after delivery, and no harm could have occurred. Rather, it argues that the addendum was just a proposed change without binding effect. Casablanca argues that no substantial housing right can be infringed by a proposed policy. Plaintiff and Defendant disagree on the nature and effect of the addendum.

Ms. Mealy sufficiently alleges that the addendum was not a "proposed policy" but rather a notice that her lease policy had changed. Furthermore, she alleges that her correspondence

with Casablanca establishes that Defendant intended to enforce the policy as if it was in effect. Compl. at ¶ 12-14. The facts as pleaded allege that Ms. Mealy's two roommates had already signed the addendum, and that Casablanca asked Ms. Mealy to do the same several times. The Complaint also alleges that Casablanca was not open to negotiating the terms of the agreement and did not affirmatively communicate that the agreement was optional. Ms. Mealy alleges that she felt threatened by the addendum and the subsequent email conversations because she believed refusing to sign the addendum would cause Casablanca to terminate her lease. Plaintiff's Response brief notes in footnote 1 that the first time Casablanca communicated to Plaintiff that it is no longer seeking to have her sign the lease addendum was in Defendant's Motion to Dismiss. Resp. at 6 n.1. These allegations are sufficient to state a plausible claim that the addendum's guest policy was in effect, rather than a proposal. Therefore, Ms. Mealy has sufficiently alleged that a harm occurred due to the change in policy.

Casablanca's argument that the policy was only a proposal is not persuasive. The term "proposal" is not used in either the addendum itself or the subsequent email exchanges. See Compl. at Ex. B. Thus, Casablanca's assertion that the addendum was just a proposal is not supported. Additionally, the email exchange makes clear there was no room for discussion about the terms of the policy. Thus, even if it was a policy proposal, Ms. Mealy could have reasonably understood the addendum as binding on her lease. Taking the facts as most favorable to the plaintiff, Ms. Mealy has pled sufficient facts to plausibly allege that the addendum constituted a discriminatory change to the terms of the lease.

### D. Harm

Ms. Mealy plausibly alleges a harm based on sexual discrimination under the Fair Housing Act. She has pled sufficient facts to allege that she was harmed by the terms of the guest

policy because it restricted her ability to use and retain her dwelling. Casablanca argues that there is no harm to the Plaintiff's right to housing because the guest policy was not established or enforced against her. Instead, Casablanca categorizes the Plaintiff's complaint as a request for relief based on an economic harm tangentially related to housing. For the reasons discussed above, the facts as pleaded sufficiently allege that the policy was in place. Ms. Mealy alleges that her lease terms became discriminatory once she was forced to comply with the guest policy. The policy would have allowed Casablanca to evict her and impose additional restrictions on the use of her dwelling.

Casablanca also argues that there must be some affirmative enforcement of a discriminatory policy for the Plaintiff to plead harm. As a matter of law, Casablanca's argument regarding the scope of the FHA is misapplied in this case.

### i. Scope of the Fair Housing Act

Casablanca argues that the guest policy is not covered by the FHA because the Act only applies to policies that impact access to housing as opposed to harms that are tangentially related to housing. Casablanca relies on Edwards v. Media Borough Council to argue that Ms. Mealy's claims are outside the scope of the FHA, relying on the District Court's interpretation of the Act. Edwards v. Media Borough Council, 430 F.Supp.2d 445, 451 (E.D.Pa. 2006). Casablanca argues that Plaintiff's housing rights were not infringed because her rights regarding her lease were not actually changed by the addendum. Rather, Casablanca argues that Ms. Mealy has only pled harm based on the emotional distress she suffered because of the addendum and subsequent email exchanges. Casablanca argues this constitutes damages tangentially related to housing as opposed to damages suffered because of housing discrimination. The court in Edwards held that claims alleging this type of tangential economic harm are not covered by the FHA. Id. Thus,

Casablanca claims that Ms. Mealy has not pled facts sufficient to establish any harm under the FHA.

Edwards is not on point in this dispute. In Edwards, Judge Brody examined whether a property owner had a proper discrimination claim against a local Borough Council for refusing to grant a zoning variance that would allow the plaintiff to build rental property on their lot. Edwards, 430 F. Supp. 2d at 447. The Edwards court does acknowledge that the FHA applies only to discrimination in access to housing and the terms and conditions of housing. Id. at 451. However, the court makes clear that Edwards' claim is outside the scope of the FHA because her complaint was unrelated to her ability to acquire housing. Id. Her complaint was about the Council's unfair zoning treatment of property she already owned. Id. Unlike in Edwards, Ms. Mealy is complaining about discriminatory terms directly related to her ability to retain her lease, not about an unfair economic situation related to housing. Thus, the Court rejects Casablanca's argument on this issue. Whether there is harm in this case is dependent on whether the addendum changed the terms of Ms. Mealy's lease. The Plaintiff has pled enough facts in the complaint that the guest policy of the lease had been changed.

V. **WAIVER OF JURY TRIAL**

In the alternative to granting the Motion to Dismiss, Casablanca argues that Plaintiff has waived her right to a jury trial through the terms of the original lease agreement. As such, Casablanca asks the Court to strike Plaintiff's jury demand and proceed on a non-jury trial basis. The Court reserves the right to rule on this issue at a later time given the sparse record at this stage in the litigation.

## VI. CONCLUSION

Plaintiff has pled sufficient facts to plausibly allege that Casablanca did establish a policy that discriminated against women and that her housing rights were plausibly harmed by that policy. For the reasons stated, the Court will deny the Motion to Dismiss. An appropriate order follows.